Herron *v.* Arkansas Wholesale Grocers
Association, Inc.

5-1102                                    296 S. W. 2d 409

Opinion delivered December 17, 1956.

*Tom Gentry,* Attorney General; *James L. Sloan,* Assistant Attorney General, for appellant.

*Talley & Owen* and *William L. Blair,* for appellee.

George Rose Smith, J. This is a suit by the wholesale grocers' association to enjoin the director of the State Board of Health from enforcing a regulation which prohibits the sale of artificially colored potatoes. The chancellor held that the applicable statute is too indefinite to be enforceable; he also found that artificially colored potatoes are not poisonous or otherwise injurious to health. Upon these findings the court enjoined

the appellant from interfering with the sale of colored waxed Irish potatoes in Arkansas.

We find no merit in the contention that the statute is too vague to be enforced. The section pertinent to this case was taken verbatim from the Federal Food, Drug, and Cosmetic Act. 21 U. S. C. A. § 342. It provides that a food shall be deemed to be adulterated "if any substance has been added thereto . . . so as to . . . make it appear better or of greater value than it is." Ark. Stats. 1947, § 82-1110 (b, 4). A statute such as this one must necessarily be phrased in rather general language, as it would manifestly be impossible for the legislature to enumerate with precision every possible instance of adulteration. Having clearly defined the types of adulteration that are forbidden, the legislature could properly authorize the Board of Health to adopt regulations within the scope of the statute. *State ex rel. Hale* v. *Lawson,* 212 Ark. 233, 205 S. W. 2d 204. The regulation now in question is brief and to the point: "(1) No artificially colored potatoes shall be sold, offered for sale, or stored for sale within the State of Arkansas . . . (3) The application of non-toxic polishing or coating materials to potatoes when such use does not conceal damage or inferiority, is not a matter of objection, providing such polishing or coating materials do not contain coloring agents."

The principal question in the case is whether the above regulation is an appropriate means of enforcing the statute; that is, does the application of a red wax coating to Irish potatoes make them appear to be better or of greater value than they really are? It is immaterial that the coating is not poisonous or injurious to health, for adulteration of that nature is prohibited elsewhere in the statute. Ark. Stats., § 82-1110 (a). It is settled by decisions under the federal law that the provision we are now considering is intended to prevent "economic adulteration," which makes a product, although not deleterious, appear to be better or more valuable than is actually the case. *United States* v. *Two Bags,*

*Each Containing* 110 *Pounds, Poppy Seeds,* C. C. A. 6, 147 F. 2d 123; *United States* v. 36 *Drums of Pop'n Oil,* C. C. A. 5, 164 F. 2d 250. Nor does it matter that the red wax is shown to be beneficial in protecting the potatoes against deterioration, for the same benefit can be attained by the use of uncolored wax, to which the Board of Health has no objection.

The great preponderance of the proof in this case shows that the coating or red wax is intended to, and does, make Irish potatoes appear to be better and of greater value than they are. It is shown that a freshly dug potato is reddish in color and contains about ninety milligrams of Vitamin C (ascorbic acid) to the pound. As the potato ages it tends to lose its color, and its vitamin content diminishes. According to the undisputed testimony, a new potato has both a greater monetary value and a greater food value than an old potato. The coating of red wax artificially preserves the original color of the potato and thus gives an old potato the appearance of a new one. It is true that experts in the produce business are able to detect the presence of artificial coloring, but the record shows clearly that the practice deceives a substantial part of the buying public. On the evidence before us there can be no doubt that the artificial coloring of potatoes is an adulteration of the type that the statute is intended to prohibit.

Other arguments made by the appellee need not detain us long. One of its witnesses expressed the fear that potatoes treated with uncolored wax might be hard to obtain, as the use of artificial coloring is widespread. Apart from the fact that expediency does not create a right to violate the law, the appellant's proof effectively refutes the suggestion that unadulterated potatoes are unavailable. There is testimony that various grocers in Arkansas have experienced no difficulty in complying with the regulation now complained of. It is also shown that the sale of artificially colored potatoes is prohibited in several other states, including California, Kansas, and Pennsylvania. It may safely be assumed that the

ordinary processes of supply and demand have not left the inhabitants of those states without potatoes that meet the requirements of their laws.

It is also said that there is no federal regulation prohibiting the transportation of artificially colored potatoes in interstate commerce; the Federal Food and Drug Administration seems to have devoted its principal attention to matters directly involving the public health. The lack of a federal regulation, however, does not prevent the state board from acting in the matter. Although the Board of Health is authorized to make its regulations conform to those issued by the federal agency, Ark. Stats., § 82-1119, the state statute does not indicate a legislative intention to confine the Board of Health to the exact field covered by the federal directives.

Reversed and dismissed.